UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FREDRICK GRIFFIN,

        Plaintiff,                    **DECISION AND ORDER**

        v.                                 1:19-CV-00120 EAW

DEBBIE GRAF, *Resident Physician Assistant*, *et al.*,

        Defendants.
_____

## INTRODUCTION

*Pro se* plaintiff Fredrick Griffin ("Plaintiff"), a prisoner currently confined at the Franklin Correctional Facility, filed this action asserting claims pursuant to 42 U.S.C. § 1983 in connection with his prior confinement at the Wyoming Correctional Facility ("Wyoming"). (Dkt. 1). Plaintiff asserts claims against defendants Debbie Graf ("Graf"), Correction Officer Orr ("Orr"), John Doe, Superintendent Thomas Sticht ("Sticht"), and Dr. Carl Koenigsmann ("Koenigsmann"), the chief medical officer of the New York State Department of Corrections and Community Supervision ("DOCCS") (collectively, "Defendants"). The Court screened Plaintiff's claims pursuant to the criteria under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and concluded that the Complaint was subject to dismissal but granted Plaintiff leave to replead his claims. (Dkt. 3).

Plaintiff timely filed an Amended Complaint. (Dkt. 10). The Court has screened Plaintiff's Amended Complaint with respect to the §§ 1915(e)(2)(B) and 1915A criteria. For the following reasons, the Court permits Plaintiff's deliberate indifference to medical

- 1 -

needs claim to proceed to service against Graf and Doe, and dismisses Plaintiff's remaining claims.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint. (Dkt. 10). As required at this stage of the proceeding, the Court treats Plaintiff's allegations as true.

On September 16, 2016, Plaintiff entered Wyoming and met with Graf, with whom he discussed "all [of his] medical concerns, including [a] pre-existing medical injury that [he] sustained while incarcerated at Rikers Island." (*Id.* at ¶ 3). Because Graf had not treated Plaintiff for his medical issues, Plaintiff fell again, further injuring himself. (*Id.* at ¶ 4). Plaintiff filed numerous grievances against Graf. (*Id.*). "Soon after filing the grievance," Orr notified Graf that "[Plaintiff] had filed a lawsuit against [DOCCS] and warned her to be careful when dealing with [Plaintiff]," and instructed Graf "not to document [Plaintiff's] injuries." (*Id.* at ¶ 5).

Sometime in August 2017, Graf was "verbally abusive and belittling" toward Plaintiff and accused Plaintiff of faking his injuries. (*Id.* at ¶¶ 6-7). Following this conversation, Graf had a Clinic Officer remove Plaintiff from the waiting area and accused Plaintiff of being "inappropriate and disrespectful." (*Id.* at ¶ 7). From that day forward, Graf refused to see Plaintiff unless Orr was also working in the clinic. (*Id.*).

Graf ordered physical therapy and an MRI for Plaintiff's lower back, despite it being "un[disputed]" that Plaintiff's medical issues concerned his neck and not his lower back. (*Id.* at ¶ 8). Plaintiff alleges that Graf "purposely disregarded the information contained in [Plaintiff's] medical records so as to" prevent Plaintiff from receiving a correct diagnosis

and to delay treatment. (*Id.*). Plaintiff attributes his suffering and "possible permanent nerve damage" to Graf's actions. (*Id.*). Plaintiff waited 28 months to receive the correct MRI and 35 months to receive his first surgical procedure on April 25, 2019. (*Id.* at ¶ 9).

Despite being aware of Plaintiff's pre-existing medical conditions and extreme pain, Graf "refused to order any tests to rule out new or other injuries" and to treat the "extreme pain in [Plaintiff's] upper neck, upper back (spinal column), shoulders, legs and hands." (*Id.* at ¶ 10). Graf stated that Plaintiff's "pain was not consistent with [his] physical injuries, and at one point informed [him] that 'there is nothing more [she could] do for'" him. (*Id.*). Due to "state budget cuts," Plaintiff "was no longer given the necessary pain medication," which "compounded [his] pain and suffering." (*Id.* at ¶ 11).

Plaintiff fell several times during his confinement at Wyoming. (*Id.* at ¶ 14). After each fall, medical staff responded to the location of his fall or he was treated in the medical department. (*Id.*). On January 17, 2017, Plaintiff was transported by ambulance to the Wyoming County Community Health System and diagnosed with "disc herniation, soft tissue strain, and vertebral fracture" by the emergency room doctor Dara Tanvir ("Tanvir"). (*Id.* ¶¶ 16-17). Graf "disregarded Tanvir's written medical diagnosis," and prescribed medication that "did very little" to "alleviate [Plaintiff's] pain." (*Id.* at ¶ 17).

On July 7, 2017, Plaintiff cut his face after falling in the shower causing a "large wound," and he requested to be housed in the "handicapped housing unit" where the bathrooms and showers were equipped with handrails. (*Id.* at ¶ 18). His request was denied, and "Graf, along with other medical staff and security personnel, including [CO] Orr" claimed that Plaintiff was faking his injuries. (*Id.*).

On August 7, 2017, Graf discontinued Plaintiff's prescription pain medication, Elavil, because "she believed that [he] didn't need the medication." (*Id.* at ¶ 19). On August 10, 2017, Plaintiff was called to the clinic where he was then threatened by Graf and Orr. (*Id.* at ¶ 20). Graf talked to Plaintiff about his "medical issues," while Orr stood close by at the request of Graf. (*Id.*). Graf also threatened to take away Plaintiff's medically-issued cane, stating that she had "spoke[n] to a specialist" and that they agreed to have the cane taken away. (*Id.* at ¶ 21). However, by August 28, 2017, Graf acknowledged that Plaintiff had "nerve damage" and placed him "back on [his] pain medication." (*Id.* at ¶ 22). Nonetheless, Graf "never regarded any medical diagnosis in reference to [Plaintiff's] disc herniation, soft tissue strain, and vertebral fracture," and "[t]o this day, [Plaintiff] continue[s] to have excruciating pain from [his] neck to [his] feet." (*Id.*).

At the end of August 2017, Orr threatened to send Plaintiff to the SHU if Plaintiff refused to take Neurotin, a medication that previously caused "problems" with his stomach. (*Id.* at ¶ 23). A short time later, Graf switched his medication back to Elavil. (*Id.*). After Plaintiff informed his "counselor" that he was having issues with his medical care, Plaintiff was placed, "[w]ithout any notice," on "1-on-1 suicide watch" in retaliation for his complaints. (*Id.* at ¶ 24). Plaintiff was then sent to the Attica Correctional Facility for a mental health evaluation after Graf and Orr "falsely made up a psychological problem" in retaliation for Plaintiff's complaints about his medical care. (*Id.*). Plaintiff's referral for a mental health evaluation indicated that Plaintiff had exhibited "signs of confusion regarding the full details of [his] medical issues." (*Id.* at ¶ 25). Plaintiff believed that

"Graf, Orr, [his] counselor, and other [Wyoming] staff" were "plotting to set [him] up again" and two weeks later, Plaintiff was transferred to Collins Correctional Facility. (*Id.*).

On June 20, 2018, Plaintiff received a final grievance decision from DOCCS' Central Office Review Committee ("CORC"). (*Id.* at ¶ 26). The decision stated, in part:

> CORC asserts that consistent with health services policy that special care referrals: the facility health director is responsible for ALL aspects of inmate care, including referrals for outpatient care and they uphold the discretion to determine the type and necessity of medication administered.

(*Id.*). Plaintiff alleges Defendant John Doe, "possibly the Nurse Administrator," "was ultimately responsible to make sure [Plaintiff] received adequate medical treatment," which John Doe failed to do. (*Id.*). Plaintiff also alleges that Defendant John Doe failed to properly supervise Graf as he should have read Plaintiff's medical records, upon being notified of Plaintiff's complaints, and ordered Graf to adequately treat Plaintiff for his injuries. (*Id.*).

## DISCUSSION

### I. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quotation omitted). Nevertheless, leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases"). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws

of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). A supervisory official can be found to have been personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

## II. Plaintiff's Claims

### A. Deliberate Indifference to Medical Need

For medical care to be so inadequate as to amount to "cruel and unusual punishment" prohibited by the Eighth Amendment, Plaintiff must allege that Defendants' "acts or omissions" amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The first component of such a claim requires that Plaintiff's medical condition be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.").

The second component is subjective and requires a plaintiff to allege that the prison official had actual knowledge of his serious medical needs but was deliberately indifferent thereto. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

Assuming that Plaintiff's medical needs constitute a serious condition for purposes of initial review, the Court finds that the Amended Complaint adequately alleges a claim of deliberate indifference against Graf and Doe. Plaintiff alleges that: Graf purposely disregarded Plaintiff's medical records resulting in him waiting 28 months to receive the

correct MRI and 35 months to undergo surgery and that as a result, Plaintiff suffered from permanent nerve damage and extreme pain; Graf deprived him of necessary pain medication, despite knowing that Plaintiff had fallen on multiple occasions; Graf threatened to take away Plaintiff's cane; and Doe knew of Plaintiff's condition, but failed to order Graf to adequately treat Plaintiff.  Accordingly, for purposes of initial review, Plaintiff's deliberate indifference claim as alleged against Graf and Doe may proceed to service.  However, Plaintiff's claim as alleged against Orr must be dismissed as the Amended Complaint fails to include any non-conclusory allegations regarding Orr's personal involvement in connection with Plaintiff's medical care.

**B.     Retaliation**

To make out a § 1983 retaliation claim, an inmate must show: (1) that he was engaged in constitutionally-protected conduct; and (2) that the prison official's conduct was taken in retaliation for the inmate's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Id*. at 79.  Actionable conduct is that which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  Retaliatory harassment need not be substantial in order to allege a First Amendment violation. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999).  However, verbal harassment or profanity alone, "no matter how inappropriate, unprofessional, or

reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) (internal quotation marks omitted).

The Court finds that Plaintiff's Amended Complaint contains only vague and conclusory allegations that Graf and Orr retaliated against him for making complaints about his medical care. Plaintiff's allegations again fail to demonstrate a plausible causal connection between his complaints and the decision to place him on suicide watch or to refer him for a mental health evaluation. Further, the Amended Complaint does not indicate which Defendants were personally involved in any determinations concerning Plaintiff's mental health status.

As an attachment to his Amended Complaint, Plaintiff provides the screening/admission notes from his mental health evaluation at Attica. (Dkt. 10 at 174). Plaintiff's mental health status was recorded as "Active Screen for further assessment" based on his own reports that he was feeling "trapped, anxious, depressed and hopeless." (*Id.*). The evaluation also noted a history of adjustment and major depressive disorders, PTSD, and paranoid thoughts. (*Id.*). The evaluation further undercuts finding Plaintiff has plausibly alleged causal connection between Plaintiff's complaints and the decision to refer him for a mental health evaluation. *See Abascal v. Jarkos*, 357 F. App'x 388, 391 (2d Cir. 2009) (finding a prisoner's claim that he was arbitrarily classified as mentally ill and transferred to a psychiatric center was not an adverse action "in light of his own description of his mental condition in his complaint"); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434-35 (S.D.N.Y. 2010) (holding that a plaintiff's past mental health issues could lead a reasonable

person to believe a referral to a mental health office was justified and not an adverse retaliatory action). Accordingly, Plaintiff's retaliation claim must be dismissed.

### C. Right to Privacy

"It is well-established that the United States Constitution recognizes a right to privacy protecting the individual interest in avoiding disclosure of personal matters." *Johnson v. Nassau Cty.*, No. 13-CV-6510(JS)(WDW), 2014 WL 294250, at *4 (E.D.N.Y. Jan. 24, 2014) (citing *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011)) (internal quotation marks omitted). "[T]he interest in the privacy of medical information will vary with the condition." *Matson*, 631 F.3d at 64. Consequently, inmates have a right to privacy that is generally limited to information relating to "excruciatingly private" or stigmatizing medical conditions. *See Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) (addressing the private and intimate nature of transsexualism for inmates who wish to preserve privacy in the matter) (citing *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (noting that those "infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition")).

Where the medical information at issue is of a "mundane nature[, . . .] whatever interest that plaintiff ha[s] in maintaining the secrecy of this information [i]s insufficient to give rise to a violation of his privacy rights." *Pisciotti v. Cty. of Wayne*, 76 F. Supp. 2d 307, 309-10 (W.D.N.Y. 1999) (internal quotation marks omitted); *see also Webb v. Goldstein*, 117 F. Supp. 2d 289, 298 (E.D.N.Y. 2000) (dismissing Fourteenth Amendment right to privacy claims where the inmate failed to allege "that his prison records contained the sort of sensitive medical information at issue in *Doe* or *Powell*").

In this case, Plaintiff vaguely alleges that Graf "talked about" his "medical issues" with Orr. (Dkt. 10 at ¶ 20). The Amended Complaint contains no indication as to the substance of the discussion and, thus, fails to plausibly allege that Graf disclosed a deeply private or stigmatizing condition. Therefore, Plaintiff has failed to adequately allege a right to privacy claim and, thus, his claim must be dismissed.

### D.  Supervisory Liability

Plaintiff also alleges that Sticht and Koenigsmann are liable for failing to supervise their subordinates. The Court finds the Amended Complaint fails to allege their personal involvement in connection with Plaintiff's claims. The Amended Complaint contains only conclusory allegations that they failed to properly supervise, train, and discipline Graf and Doe. Such allegations are insufficient to allege supervisory liability under § 1983 and, thus, Plaintiff's claims against Sticht and Koenigsmann are dismissed with prejudice. *See Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (affirming dismissal of supervisory official where complaint lacked "any hint that [the official] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights"); *Mimms v. Carr*, No. 09-CV-5740 (NGG)(LB), 2011 WL 2360059, at *14 (E.D.N.Y. June 9, 2011) (dismissing supervisory liability claims where the plaintiff, in conclusory fashion, alleged that defendants had failed to supervise or train their subordinates).

### III.  *Valentin* Order

As noted above, the Amended Complaint lists John Doe as a defendant. Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the Court requests that the New York

State Attorney General's Office ascertain John Doe's full name and address. The Attorney General's Office need not undertake to defend or indemnify this individual at this juncture. This Order merely provides a means by which Plaintiff may name and properly serve John Doe, as instructed by the Second Circuit in *Valentin*.

The New York State Attorney General's Office is hereby requested to produce the information specified above regarding the identity of John Doe within 35 days of the date of this Order. Once this information is provided to the Court, without further order, Plaintiff's Amended Complaint is deemed amended to reflect the full name of Defendant, service is directed, and a summons shall issue.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's deliberate indifference claim against Graf and Doe may proceed to service. The following claims are dismissed pursuant to § 1915(e)(2)(B) and 1915A: deliberate indifference claim against Orr; retaliation claim against Graf and Orr; right to privacy claim against Graf and Orr; and all claims against Sticht and Koenigsmann.

## **ORDER**

IT HEREBY IS ORDERED that Plaintiff's deliberate indifference claim against Orr, retaliation claim against Graf and Orr, right to privacy claim against Graf and Orr, and all claims against Sticht and Koenigsmann are dismissed, and the Clerk of Court is directed to terminate Orr, Sticht, and Koenigsmann as parties to this action; and it is further

ORDERED that the Clerk of Court is directed to cause the United States Marshal Service to serve copies of the Summonses, Amended Complaint and this Order upon Graf

and, once identified, Doe, without Plaintiff's payment therefor with unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that the Clerk of Court will forward a copy of this Order to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office at Michael.Russo@ag.ny.gov; and it is further

ORDERED that the Clerk of Court will use the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website (http://www.doccs.ny.gov/faclist.html) as needed; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to respond to the Amended Complaint upon service.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

DATED: April 21, 2020
Rochester, New York